IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| BOBBY LEWIS, | ) | |
| | ) | |
| PLAINTIFF, | ) | CIVIL ACTION NO. 1:24-cv-12911-LJM-PTM |
| | ) | |
| vs. | ) | |
| | ) | HON. THOMAS J. LUDINGTON |
| THE DOW CHEMICAL COMPANY, | ) | |
| | ) | |
| DEFENDANT. | ) | |
| _____ | ) | |

## AMENDED COMPLAINT

PLAINTIFF, BOBBY LEWIS, by and through his attorneys, CARLA D. AIKENS, P.L.C., submits the following Amended Complaint and Demand for Trial by Jury against THE DOW CHEMICAL COMPANY.

## JURY DEMAND

COMES NOW PLAINTFF, and hereby makes his demand for trial by jury.

## JURISDICTION

1.      At all times relevant to this complaint, PLAINTIFF BOBBY LEWIS was a resident of Saginaw, County in the State of Michigan.

2.      DEFENDANT THE DOW CHEMICAL COMPANY is a domestic for-profit corporation, which has a place of business in Midland, Michigan.

3.      This action is brought in this Court on the basis of federal question jurisdiction, pursuant to 42 U.S.C. § 1981.

4.      Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

1

## VENUE

5.      Venue is proper in the Eastern District of Michigan pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

6.      Plaintiff is a Black man and former employee of Defendant who was employed as a Third-Shift Coordinator at Defendant's Building 2602 from 2014 until his termination in 2022.

7.      Plaintiff was responsible for overseeing operations and training employees, including assisting in the acclimation of employees transferred from other buildings.

8.      In mid-2022, Plaintiff was involved in training Sushma Jones, who had been transferred from Building 2505 to Building 2602, following racial and gender discrimination and harassment claims against employees from Building 2505.

9.      It was well known at the Midland location and buildings that Ms. Jones had made complaints about discrimination while working in Building 2505 and was being harassed.

10.     When Plaintiff was moved to Building 2602, a Black male employee by the name of "Skee" informed Plaintiff about the racial discrimination and harassment that Ms. Jones was experiencing in Building 2505, and Ms. Jones later informed of Plaintiff about had occurred.

11.     Plaintiff recalled that Sushma Jones was compared to Harriet Tubman, which he thought was extremely inappropriate, and many people in the building knew about this situation.

12.     Plaintiff was told that Ms. Jones had an incident in Building 2505 and was arguing with people, and that she was being sent to Building 2602 because of that.

13.     When Ms. Jones arrived in Building 2602 "small pack," Plaintiff assigned a white

employee by the name of "Mike" to train Ms. Jones, but he refused to train her after

about 30 minutes.

14.     Plaintiff intervened and said Mike could not treat her like that and that she had just come

from another building where other employees (who were also white) were refusing to

train her.

15.     Mike would go to management, in closed door sessions, which included Dan Snyder, the

building supervisor and Jonathan, another packager, every morning to complain about

Ms. Jones.

16.     After Ms. Jones told Plaintiff that Mike had refused to train her yet again, and because

Plaintiff had already talked to Mike three times about not training her, Plaintiff attempted

to de-escalate the situation by reassigning Jones to another trainer, Chuck Hart, who is

also a white male.

17.     Hart also did not want to train Ms. Jones and complained about her to management every

day.

18.     Approximately two weeks before Ms. Jones went out on leave, Plaintiff job-shadowed

with Mario Williams, a Black male, when Mr. Williams was working at the gate in

shipping and receiving.

19.     Plaintiff told Mr. Williams that Ms. Jones was being messed with in Building 2602 just

as she had in Building 2505.

20.     Shortly after that, upon information and belief, Ms. Jones was under severe stress and

went out on medical leave.

21.     On or about August 22, 2022, upon information and belief, Ms. Jones informed Dan

Snyder, the supervisor in Building 2602, that Plaintiff had to talk to Mike three times because Mike would not train her.

22. The issue that Ms. Jones experienced of not being trained to do her position, which was typical of the way that Plaintiff observed Dow treating its Black employees.

23. Shortly thereafter, Ms. Jones resigned from Dow due to the mental stress from work.

24. Not more than a few weeks later, Mario Williams was terminated.

25. Plaintiff later learned that Dow management disapproved of his decision to reassign Ms. Jones to a different trainer and had preferred that she continue "training" with Mike.

26. Approximately a month after Ms. Jones resigned, and two weeks after Mr. Williams was terminated, Plaintiff was also terminated by Dow.

27. Dow management alleged that Plaintiff improperly clocked in for hours when he was not present, leading to his termination, upon information and belief, sometime in September 2022.

28. Plaintiff denies that he did anything improper and believes that his termination was because of his race, and that his termination was also retaliatory and related to his known association with Ms. Jones, who had complained of racial discrimination and harassment, and his efforts to support Ms. Jones during her training.

29. Throughout his time at Dow, Plaintiff observed discriminatory behavior against Black employees, including derogatory comments made by white co-workers about an employee named "Skee," originally from Alabama.

30. Plaintiff also observed racial disparities in promotions and job placements. For example, he recommended a qualified Black employee for a lab position, but the Black employee was repeatedly denied the opportunity despite his relevant degrees and skills, while less-

4

qualified white employees were promoted.

31.     It seemed to Plaintiff that the Black employees there were set up for failure and that a different set of criteria applied to their jobs versus white employees.

32.     Plaintiff observed that Dow treated its Black employees worse than its white employees, and if the Black employees spoke up, they were only treated worse.

33.     Plaintiff personally observed a clear pattern of retaliation by management, particularly against Black employees.

34.     Plaintiff requests damages as set forth herein.

## COUNT I

## RACIAL DISCRIMINATION IN VIOLATION OF 42 USC § 1981

35.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

36.     42 U.S.C. § 1981 prohibits employers from intentionally discriminating against individuals, including employees, in the making and enforcement of contracts.

37.     Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded him by the U.S. Constitution and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

38.     By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 U.S.C. § 1981.

39.     The intentional discrimination on the basis of Plaintiff's race by Defendant that Plaintiff

has experienced included not providing him with the same autonomy to make decisions in his role and eventually terminating him, which broke the contract between the parties.

40. Defendant has a pattern and/or practice of harassing Black employees and trying to get them to quit, not promoting them, and terminating Black employees for made up or minor reasons such as time card violations, whereas white employees did not suffer the same treatment.

41. The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

42. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

43. As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about her future, physical and emotional distress, and loss.

## COUNT II
## RETALIATION IN VIOLATION OF THE ELCRA

44. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

45. At all material times, Plaintiff was an employee, and Defendant was his employer covered by, and within the meaning of, the ELCRA.

46. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

6

47.    Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

48.    Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including speaking up about racial discrimination on the part of Ms. Jones and harassment.

49.    Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to agents of Defendant.

50.    After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, including terminating him.

51.    Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

52.    Plaintiff notified Defendant and its agents of the unwelcome conduct and communication; however, Defendant failed to remedy the same.

53.    As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

54.    As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

55.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III
## RETALIATION IN VIOLATION OF THE ELCRA, BASED ON ASSOCIATION

56.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

57.     At all material times, Plaintiff was an employee, and Defendant was his employer covered by, and within the meaning of, the ELCRA.

58.     A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

59.     Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to terminate an employee on the basis of their association (perceived or actual) with an individual who has complained of discrimination prohibited under the ELCRA.

60.     Plaintiff was terminated, as more fully laid out in the statement of facts, for helping to train and otherwise being associated with Ms. Jones, who had complained of discrimination prohibited under the ELCRA.

61.     Defendant, through its agents, had knowledge of Plaintiff's association because he spoke up to management about discrimination she was experiencing, tried to help her receive training and management did not like that Plaintiff assigned her to a different trainer, after she was transferred to his building following an investigation into her discrimination and harassment complaints.

62.     It was Plaintiff's belief that Defendant wanted to mistreat Ms. Jones enough for her to quit and it was clear that Defendant did not like that he was trying to stand up for her and help her receive training.

63.     After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, including terminating him.

64.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

65.     As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

66.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

67.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV

### DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

68.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

69.     At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

70.     Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race or skin color.

71.     Plaintiff is a Black man, and, as a result, is a member of a protected class pursuant to ELCRA.

72.     Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class, as stated herein.

73.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

74.     The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

75.     As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiffs have sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

76.     Plaintiff requests relief as described in the Prayer for Relief below.

**COUNT V**
**HOSTILE WORKPLACE ENVIRONMENT IN VIOLATION OF THE ELCRA**

77.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

78.     At all material times, Plaintiff was an employee, and Defendant was his employer covered by, and within the meaning of, the ELCRA.

79.     A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

80.     Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

81.     Plaintiff's work environment, as alleged in the statement of facts made it so any individual who reported or spoke out against Defendant's discriminatory practices had an unworkable work environment.

82.     Moreover, Plaintiff's attempts to have the situation remedied, coupled with Defendant ignoring Plaintiff's complaints made the situation untenable.

83.     Additionally, Plaintiff observed Defendant treat Black employees, including Skee and Ms. Jones, in a hostile, intimidating, and offensive way, and management never took Plaintiff's side of things.

84.     The unwelcomed conduct and communication was intended to, or in fact did, substantially interfere with Plaintiff's employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

85.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

86.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

87.     Plaintiff requests relief as described in the Prayer for Relief below

## RELIEF REQUESTED

PLAINTIFF, BOBBY LEWIS, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;
2. Exemplary damages in whatever amount which Plaintiff is entitled;
3. An award of lost wages and the value of fringe benefits, past and future;
4. An award of interest, costs, and reasonable attorney fees; and
5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  February 7, 2025                    Respectfully Submitted,

                                            CARLA D. AIKENS, P.L.C.

                                            /s/ Carla D. Aikens
                                            Carla D. Aikens (P69530)
                                            Rejanaé M. Thurman (P85701)
                                            615 Griswold St., Ste. 709
                                            Detroit, MI 48226
                                            carla@aikenslawfirm.com
                                            rejanae@aikenslawfirm.com
                                            *Attorneys for Plaintiff*