UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOBBY LEWIS,

      Plaintiff,

v.

THE DOW CHEMICAL COMPANY,

      Defendant.

Case No. 24-12911
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING MOTION TO DISMISS [14]**

---

Bobby Lewis alleges that his former employer discriminated against him on the basis of race in violation of 42 U.S.C. § 1981 and Michigan's Elliott-Larsen Civil Rights Act. But his conclusory and unsupported allegations fail to state a claim under § 1981. The Court thus grants the defendant's motion to dismiss Lewis' § 1981 claim (ECF No. 14) and declines to exercise supplemental jurisdiction over his ELCRA claims.

## I. Procedural Background

In November of 2024, Lewis filed this lawsuit against the Dow Chemical Company[1] alleging race discrimination in violation of 42 U.S.C. § 1981 and the

---

[1] Defendant points out that Lewis is a former employee not of the Dow Chemical Company but of Dow Silicones Corporation, "a separate legal entity and also a subsidiary of The Dow Chemical Company." (ECF No. 14, PageID.75 n.1.) It asserts that "[a]lthough defense counsel made Plaintiff's counsel aware of this, and provided proof of the same, Plaintiff did not name the proper party in his Amended Complaint." (*Id.*) So "while The Dow Chemical Company is not liable in the capacity in which it has been sued," the defendant "respond[s] [in its motion to dismiss] as if

Michigan Elliott-Larsen Civil Rights Act. (ECF No. 1.) After Dow moved to dismiss the complaint for failure to state a claim (ECF No. 11), the Court granted Lewis leave to file an amended complaint (ECF No. 12 ("Without expressing any view regarding the merits of Dow's motion to dismiss, the Court will grant Lewis the opportunity to file an amended complaint to remedy the purported defects that Dow has raised in its motion to dismiss.")).

In his amended complaint, Lewis raised claims under the same two statutes: one violation of 42 U.S.C. § 1981 (racial discrimination) and four violations of the ELCRA (retaliation, retaliation based on association, discrimination on the basis of race, and hostile workplace environment).[2] (ECF No. 13.)

Now before the Court is Dow's motion to dismiss Lewis' amended complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 14.) Dow asserts that "even after being given the opportunity to amend his Complaint to avoid dismissal, [Lewis'] Amended Complaint . . . continues to be riddled with vague conclusions regarding his alleged 'observations' while he worked at Dow but makes no allegation that Plaintiff

_____

Dow Silicones Corporation were named as the proper party" and refers to the defendant simply as "Dow" throughout. (*Id.*) The Court does the same.

[2] In addition to arguing for dismissal of all five of Lewis' claims, Dow asserts that Lewis' addition of a new claim in his amended complaint exceeded the scope of the Court's prior order, which granted Lewis leave "to allege all additional facts that may cure any of the alleged deficiencies in his complaint and that could support his claims." (ECF No. 12, PageID.54–55; *see also id.* at PageID.55 ("[T]his is Lewis' one opportunity to allege all additional facts that may cure any of the alleged deficiencies in the complaint.").) Dow contends that Lewis' new ELCRA claim of retaliation based on association "should be disregarded." (ECF No. 14, PageID.90.) Because the Court dismisses Dow's federal claim and declines to exercise supplemental jurisdiction over his ELCRA claims, the Court need not address this argument by Dow.

himself was ever subject to any discriminatory treatment." (*Id.* at PageID.76.) The motion is fully briefed (ECF Nos. 16, 17) and does not require further argument, *see* E.D. Mich. LR 7.1(f).

## II. Legal Standard

In deciding Dow's motion to dismiss, the Court accepts as true Lewis' well-pled allegations and draws all reasonable inferences in his favor. *See Thomas v. Montgomery*, 140 F.4th 335, 339 (6th Cir. 2025). "[T]he Court should not accept conclusions of law or unwarranted inferences of fact cast in [the] form of factual allegations." *Han v. Univ. of Dayton*, 541 F. App'x 622, 625 (6th Cir. 2013). Lewis' "factual allegations . . . must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). His "complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Han*, 541 F. App'x at 626.

## III. Factual Allegations

From 2014 until his termination in 2022, Bobby Lewis, a Black man, worked for Dow as a Third-Shift Coordinator. (ECF No. 13, PageID.57.) Lewis "was responsible for overseeing operations and training employees, including assisting in the acclimation of employees transferred from other buildings." (*Id.*) One such employee was Sushma Jones, who in 2022 was transferred to Lewis' building from another building where she had allegedly experienced racial and gender

3

discrimination.[3] (*Id.*) Jones had been "compared to Harriet Tubman, which [Lewis] thought was extremely inappropriate."[4] (*Id.*) He does not say who allegedly made that comparison.

Upon Jones' transfer to the building where Lewis worked, a white employee named Mike was assigned to train her, "but he refused to train her after about 30 minutes." (*Id.* at PageID.58.) Lewis does not say why. But he says he "intervened" and told Mike that he "could not treat [Jones] like that and that she had just come from another building where other employees (who were also white) were refusing to train her." (*Id.*) Lewis "talked to Mike three times about not training [Jones]," then "attempted to de-escalate the situation by reassigning Jones to another trainer, Chuck Hart, who is also a white male." (*Id.*) But Chuck "also did not want to train" Jones. (*Id.*) And Mike and Chuck both "complained about [Jones] to management every day." (*Id.*; *see id.* ("Mike would go to management, in closed door sessions, which included Dan Snyder, the building supervisor and Jonathan, another packager, every morning to complain about Ms. Jones.").) Lewis says he "later learned that Dow management disapproved of his decision to reassign Ms. Jones to a different trainer and had preferred that she continue 'training' with Mike." (*Id.* at PageID.59.)

---

[3] Lewis says that Jones was transferred both because of the complaints she made about her alleged discrimination and because of a seemingly unrelated "incident." (*Compare* ECF No. 13, PageID.57 ("[Jones] had been transferred from Building 2505 to Building 2602, following racial and gender discrimination and harassment claims against employees from Building 2505."), *with id.* ("Jones had an incident in Building 2505 and was arguing with people, and . . . she was being sent to Building 2602 because of that.").)

[4] Jones has separately sued Dow for Title VII and ELCRA violations. *See Jones v. Dow Chemical Co.*, No. 23-11814 (E.D. Mich. filed July 26, 2023).

Eventually, Jones went on medical leave and soon after resigned "due to the mental stress from work." (*Id.* at PageID.58–59.) Lewis adds that another Black employee, Mario Williams, was also terminated "[n]ot more than a few weeks" later. (*Id.* at PageID.59.) The only information Lewis provides about Williams, besides the fact that he was fired, is that Lewis had told Williams about Jones "being messed with in Building 2602 just as she had [been] in Building 2505." (*Id.* at PageID.58.) Another two weeks later (i.e., about a month after Jones' resignation and about two weeks after Williams' termination), Lewis was terminated. (*Id.* at PageID.59.) He says that "Dow management alleged that [he] improperly clocked in for hours when he was not present" (*id.*), i.e., that he was terminated for timecard fraud (*see* ECF No. 14, PageID.78). But Lewis "denies that he did anything improper and believes that his termination was because of his race." (ECF No. 13, PageID.59.) Lewis further alleges "that his termination was also retaliatory and related to his known association with Ms. Jones, who had complained of racial discrimination and harassment, and his efforts to support Ms. Jones during her training." (*Id.*)

According to Lewis, "[t]he issue that Ms. Jones experienced of not being trained to do her position . . . was typical of the way that Plaintiff observed Dow treating its Black employees." (*Id.*) By way of elaboration, Lewis asserts:

> 29. Throughout his time at Dow, Plaintiff observed discriminatory behavior against Black employees, including derogatory comments made by white co-workers about an employee named "Skee," originally from Alabama.
>
> 30. Plaintiff also observed racial disparities in promotions and job placements. For example, he recommended a qualified Black employee for a lab position, but the Black employee was repeatedly denied the

opportunity despite his relevant degrees and skills, while less-qualified white employees were promoted.

31. It seemed to Plaintiff that the Black employees there were set up for failure and that a different set of criteria applied to their jobs versus white employees.

32. Plaintiff observed that Dow treated its Black employees worse than its white employees, and if the Black employees spoke up, they were only treated worse.

33. Plaintiff personally observed a clear pattern of retaliation by management, particularly against Black employees.

(*Id.* at PageID.59–60.) Lewis does not expand on these allegations. And while he focuses on these other employees, he says little about what he specifically experienced.

## IV. Section 1981

Section 1981 prohibits intentional race discrimination in both public and private employment. *See* 42 U.S.C. § 1981(a) ("All persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."); *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867–68 (6th Cir. 2001). To state a claim for relief under § 1981, Lewis must plausibly allege that (1) he belongs to a protected class, (2) Dow intended to discriminate against him based on his race (i.e., discriminatory intent), and (3) Dow's discriminatory conduct abridged his right to contract (as through termination). *See Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006). The third element includes a but-for causation requirement. *See Inner City Contracting, LLC v. Charter Twp. of Northville*, 87 F.4th 743, 756 (6th Cir. 2023). That is, "[t]o prevail [under § 1981] . . . a plaintiff must initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected

right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020); *see also Han*, 541 F. App'x at 626 (explaining that *Twiqbal*'s "plausibility" standard "applies to causation in discrimination claims," including those brought under § 1981).

Dow argues that Lewis fails to satisfy the third element of his § 1981 claim. It asserts that Lewis "simply states that he is a Black man and that he '*believes* his termination was because of his race'" but that, "[b]esides his own belief, [Lewis] does not provide any detail or facts that would allow the Court to infer how his race was the but-for cause of his termination, as required." (ECF No. 14, PageID.82 (quoting ECF No. 13, PageID.59); *see also* ECF No. 17, PageID.120 ("Plaintiff does not allege facts (or even make any argument regarding his termination) that could lead this Court to conclude that race played any role in it.").) Lewis' complaint, according to Dow, "is devoid of any allegation that he was subjected to any discriminatory treatment, that he was treated differently than employees of other races, or that any factual basis exists to question the reason for [his] termination" (which, by Lewis' own admission, was that he "improperly clocked in for hours when he was not present"). (ECF No. 14, PageID.82; *see also* ECF No. 17, PageID.120 ("Nor does Plaintiff allege any facts that *he* was subjected to any harassment or retaliation. The whole of Plaintiff's Amended Complaint rests on conclusory allegations relating to 'observations' Plaintiff made while working for Dow.").) Dow says the reasoning in *Han v. University of Dayton*, 541 F. App'x 622 (6th Cir. 2013), applies here and warrants dismissal because Lewis "alleges no set of facts, beyond . . . bare and

7

conclusory assertions, from which a reasonable person could infer how his race . . . factored into [his employer's] decisions regarding his employment or caused him to lose his job, as opposed to any other, non-discriminatory basis for decisions regarding his employment." *Id.* at 626.

Lewis does little to counter Dow's arguments. In his response, he points only to conclusory allegations in his complaint, which he says state a claim under § 1981. (*See* ECF No. 16, PageID.107–109.) According to Lewis, his complaint adequately alleges that "[Dow] intentionally discriminated against [him] in violation of [his] rights" (*id.* at PageID.108) because it states that Dow "intentionally deprived [him] of the same rights as are enjoyed by individuals who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship" (*id.* (quoting ECF No. 13, PageID.60)). Lewis continues that "[t]he Complaint goes on to allege that the intentional discrimination of [Dow] that [he] experienced included 'not providing him with the same autonomy to make decisions in his role and eventually terminating him.' This statement clearly states that racial discrimination was the but-for cause of Plaintiff's termination." (*Id.* at PageID.108–109 (quoting ECF No. 13, PageID.61).) But "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor will "[b]road and conclusory allegations of discrimination." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012); *see Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."). At best, Lewis

merely gestures to the scarce factual allegations in his complaint—asserting that his "allegations, coupled with the other facts in the Complaint related to racial discrimination, sufficiently state a claim upon which relief can be granted." (ECF No. 16, PageID.109; *see id.* at PageID.107 ("Plaintiff identified that there were issues with non-African American employees being treated better and afforded different benefits.").) But he fails to marshal any of these allegations to show how he has satisfied his burden at the pleading stage.[5]

That may be because Lewis' complaint, even after an opportunity to amend, does not actually contain many facts at all. *See James v. Hampton*, 592 F. App'x 449, 461 (6th Cir. 2015) ("[T]he complaint must . . . allege sufficient 'factual content' from which a court could 'draw the reasonable inference' of racial discrimination."). True*,* Lewis alleges that he is Black, that Dow terminated him, and that he "believes that his termination was because of his race." (ECF No. 13, PageID.59.) But these allegations satisfy only Lewis' requirements of pleading that he belongs to a protected class and that Dow interfered with his contractual rights (by terminating him). To state a claim of intentional race discrimination under § 1981, Lewis must do more— he must "connect the dots" between his termination and his race. *House v. Rexam*

---

[5] Dow's characterization of Lewis' response brief is apt: "[Lewis] does not attempt to distinguish the law Dow cites, nor does he cite to any law to support that his conclusory allegations are sufficient to state a § 1981 claim. Plaintiff only cites back to his formulaic recitation of the elements that Dow 'intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who are non-African American.'" (ECF No. 17, PageID.121 (quoting ECF No. 16, PageID.108); *see also id.* at PageID.121–122 ("Plaintiff . . . simply attempts to refer back to other allegations but fails to explain which if any of those could support a race discrimination claim beyond the speculative level.").)

*Beverage Can Co.*, 630 F. App'x 461, 464 (6th Cir. 2015); *cf. Rhodes v. R & L Carriers, Inc.*, 491 F. App'x 579, 581 (6th Cir. 2012) (finding that plaintiff pled sufficient facts to plausibly link his termination to his age where plaintiff alleged that his employer "reviewed the ages of applicants for employment and specifically rejected applicants based on their age and also set a maximum age limit for certain positions, including drivers" and that "Executive Vice President discussed at a meeting the need to lower the average age of the workforce to thirty-two years of age"). "Simply because a plaintiff is a member of a protected class and has had some adverse employment action taken against him, without more specific details or allegations of job-related racial discrimination, does not state a valid claim under 42 U.S.C. § 1981." *Shah v. Fortive Corp.*, No. 22-312, 2024 WL 3226108, at *11 (S.D. Ohio June 27, 2024); *see Mobley v. Team Wellness Ctr.*, No. 22-12589, 2024 WL 1317783, at *5 (E.D. Mich. Mar. 27, 2024) ("Because [Plaintiff's] amended complaint lacks facts that connect the dots between any denied promotion and her race, it fails to plausibly state a claim for relief under § 1981."); *Roan v. Ensminger*, 294 F. Supp. 3d 758, 762–63 (M.D. Tenn. 2018) ("The only thing the Court can draw from [Plaintiff's] filings at this point is that he is a black man who was fired after a bank deposit was not made. As a matter of law, and in the absence of any allegation that his race or gender played any role in his termination, this is simply insufficient to plead a discrimination claim [under Title VII].").

Lewis' unsupported and conclusory "belief" does not allow the Court to reasonably infer a causal connection. *See Jackson v. Clinic Sec. & Logistics, Inc.*, No.

22-985, 2023 WL 2734669, at *3 (N.D. Ohio Mar. 31, 2023) ("[Plaintiff] states [Defendant] 'intentionally discriminated against him on the basis of his race,' but this is only a legal conclusion. He attempts to buttress this assertion by alleging generally that '[s]imilarly situated white members of management were much more favorably treated,' but this statement is no more than a legal conclusion masked as a factual allegation."); *Brown v. Accenture Fed. Servs.*, No. 15-24, 2016 WL 3298543, at *9 (E.D. Ky. June 13, 2016) ("[Plaintiff] does not allege enough facts to suggest that anyone at [his place of employment] was motivated by racial animus toward him or that his termination was in any way connected to racial discrimination. [Plaintiff's] mere assertions of discrimination are unwarranted inferences that do not raise his right to relief above mere speculation, and therefore his claim of racial discrimination [under § 1981] must be dismissed."); *see also Han*, 541 F. App'x at 627 ("This Court is not required to accept inferences drawn by Plaintiff if those inferences are unsupported by the facts alleged in the complaint.").

Nor does his allegation that Dow "has a pattern and/or practice of harassing Black employees and trying to get them to quit, not promoting them, and terminating Black employees for made up or minor reasons such as time card violations, whereas white employees did not suffer the same treatment" sufficiently make out but-for causation. (ECF No. 13, PageID.61.) While Lewis offers the specific factual allegation that he was personally terminated for timecard violations, he fails to plausibly allege that that reason was "made up." Again, it is not enough for him to simply allege that he "denies that he did anything improper and believes that his termination was

11

because of his race." (*Id.* at PageID.59); *see Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) ("[C]onclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law."). Lewis pleads no facts plausibly connecting his own termination to his race, nor can he plead a "pattern and/or practice" without specific facts about other Black employees' termination. His only allegation about another Black employee's termination is that Williams was terminated "[n]ot more than a few weeks" after Jones resigned (which was about two weeks before Lewis' own termination). (ECF No. 13, PageID.59.) Beyond mere temporal proximity, Lewis says nothing about the circumstances of Williams' termination. His allegations about Jones' resignation are similarly unrelated, and in any event fail to suggest a pattern or practice of anything. Even assuming he contends that Jones resigned because Dow was "trying to get [her] to quit," Lewis again fails to plead any supporting facts. Equally fatal, Jones fails to offer any support whatsoever for his claim that similarly situated white employees "did not suffer the same treatment" despite engaging in the same conduct. *Cf. Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (finding that plaintiff plausibly alleged discrimination claims under § 1981 and Title VII where her assertion that defendant "had a pattern or practice of discrimination against African American managers and professional staff in hiring, compensation, promotion, discipline, and termination" was supported by "details [of] several specific events in each of those employment-action categories where [plaintiff] alleges she was treated differently than her Caucasian management counterparts").

Lewis' remaining allegations about other Black employees (besides Jones and Williams) do not save his § 1981 claim. Recall that Lewis' complaint contains a series of conclusory allegations to this effect. (ECF No. 13, PageID.59–60.) The Court addresses two representative examples. First, Lewis alleges that "[t]hroughout his time at Dow, [he] observed discriminatory behavior against Black employees, including derogatory comments made by white co-workers about an employee named 'Skee,' originally from Alabama." (*Id.* at PageID.59.) His allegation ends there; he does not describe any "derogatory comments made by white co-workers" about Skee, and he says nothing further about "discriminatory behavior against Black employees" other than Skee. The Court cannot simply take Lewis' word for it that he "observed discriminatory behavior against Black employees." So he fails to plead a plausible inference of racial discrimination based on these allegations. *See Wimberly v. Transcraft*, No. 19-180, 2020 WL 3513244, at *4 (W.D. Ky. June 29, 2020) ("Although Plaintiff mentions that one of his fellow employees was subjected to racial slurs, he has not pled facts to suggest that the individuals responsible for the allegedly discriminatory conduct made derogatory statements to other employees or Plaintiff in particular. Furthermore, there are no other facts in the Complaint to suggest that the adverse employment action was motivated by Plaintiff's status as an African American. Accordingly, Plaintiff's discrimination claim [under Title VII] against Metro Staffing must be dismissed.").

Lewis also alleges that he "observed racial disparities in promotions and job placements." (ECF No. 13, PageID.59.) For example, Lewis says "he recommended a

qualified Black employee for a lab position, but the Black employee was repeatedly denied the opportunity despite his relevant degrees and skills, while less-qualified white employees were promoted." (*Id.*) This allegation is anything but clear. Was the lab position a "promotion?" Did it go to a less qualified white employee? What made the white employee less qualified? What specific promotions were sought by Black employees that were given to less qualified white employees? In any event, that allegation, without more, is not enough to state a § 1981 claim. *See Sanders v. Hire Couns.*, No. 23-10033, 2023 WL 9111613, at *9 (E.D. Mich. Nov. 30, 2023) ("[F]ailing to hire qualified African-American employees, . . . does not, in and of itself, equate or even lead to an inference of unlawful discrimination based on race, nor would such an inference arise solely from failing to hire qualified people of any other race."), *report and recommendation adopted*, 2024 WL 69808 (E.D. Mich. Jan. 5, 2024); *Gordon v. Amazon.com Servs. LLC*, No. 24-177, 2025 WL 1150647, at *3 (E.D. Ky. Apr. 18, 2025) (finding that plaintiff failed to adequately plead § 1981 claim where he did not offer sufficiently specific factual allegations about the employee who replaced him or about his less favorable treatment than similarly situated, non-protected employees) (collecting cases).[6]

---

[6] The Court need not address Lewis' allegations about Jones that relate only to his ELCRA claims, not his § 1981 claim.

Plus, even if the Court were to consider them, they suffer from the same fatal flaw as his other allegations: they do not permit the Court to reasonably infer a causal connection between race and Dow's alleged misconduct. Indeed, he does not say why Mike and Chuck "refused" to train Jones, what they said when they "complained about her to management every day," or how their refusal or complaints exhibited racial animus. (ECF No. 13, PageID.57–58); *see Mobley*, 2024 WL 1317783, at *3 (dismissing § 1981 claim where plaintiff alleged that she was told "'numerous times'

In short, with respect to a claim under § 1981, "while [Lewis'] employment may have been terminated against his wishes, his complaint does not plausibly show that the termination of his employment, or any other adverse employment decision to which he may have been subjected, was a result of discrimination based upon his race." *Han*, 541 F. App'x at 627; *see Mobley*, 2024 WL 1317783, at *3 ("In sum, the alleged details about a co-worker's general animus toward [Plaintiff] and other frustrations and injustices her co-workers experienced, and she witnessed, at most imply a 'mere possibility of misconduct' under § 1981 and do not 'raise a right to relief above the speculative level.'"). His sparse and conclusory allegations simply do not permit the Court to "draw the reasonable inference" that Dow terminated him because of his race. *Iqbal*, 556 U.S. at 678. And because his complaint "lacks facts that connect the dots between" his termination "and [his] race, it fails to plausibly state a claim for relief under § 1981." *Mobley*, 2024 WL 1317783, at *3.

## V. ELCRA

Having dismissed Lewis' § 1981 claim, the Court declines to exercise supplemental jurisdiction over his claims alleging violations of the ELCRA. *See* 28

---

that a different . . . employee, identified only as Pam, disliked Mobley" but "d[id] not allege that anyone told her that Pam disliked her because she was Black"). His allegations on this score are all vague and conclusory. (*See, e.g.*, ECF No. 13, PageID.58 ("[Lewis] intervened and said Mike could not treat [Jones] like that and that she had just come from another building where other employees (who were also white) were refusing to train her."); *id.* at PageID.59 ("[Lewis] later learned that Dow management disapproved of his decision to reassign Ms. Jones to a different trainer and had preferred that she continue 'training' with Mike.").) Lewis also does not plausibly plead a link between his association with Jones and his termination. (*See* ECF No. 14, PageID.88–89, 93–94.)

U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction over claims arising under state law if it has dismissed all claims over which it had original jurisdiction); *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) ("As a rule of thumb, . . . [w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims."); (*see also* ECF No. 13, PageID.56 (explaining that both Lewis and Dow are citizens of Michigan and asserting that "[t]his action is brought in this Court on the basis of federal question jurisdiction, pursuant to 42 U.S.C. § 1981).) The Court thus dismisses Lewis' ELCRA claims without prejudice.

## VI. Conclusion

For the above reasons, the Court GRANTS Dow's motion to dismiss (ECF No. 14). A separate judgment will follow.

SO ORDERED.

Dated: September 10, 2025

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE